U.S. FILED
EASTERN DISTRICT COURT
DISTRICT OF LA
2004 SEP 22 AM 9: 48
LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------X
RUSSELL J. HENDERSON, *et al.*,       :
                                      :
        Plaintiffs,            :
vs.                                   :   Civil No. 00-2237, Section "K"
                                      :
RICHARD L. STALDER, Secretary, Department :
of Public Safety and Corrections and JOHN :
KENNEDY, State Treasurer,             :
                                      :
        Defendants.            :
---------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STALDER'S MOTION PURSUANT TO FED. R. CIV. P. 60(b)

Plaintiffs, by and through their undersigned counsel, respectfully submit the following memorandum of law in opposition to the motion of Defendant Stalder pursuant to Fed. R. Civ. P. 60(b) for relief from the Court's judgment.

## INTRODUCTION

In response to the enactment of Act 849 by the Louisiana Legislature in 2004 ["the Act"], Defendant Stalder ["the State"] has filed a "motion for relief from judgment or order" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The motion as served upon Plaintiffs does not even include a copy of the Act. For the convenience of the Court, the Act is attached to this memorandum. As is readily apparent from even cursory review of the Act, the State has substantially mischaracterized it. The Act contains two basic provisions. First, it instructs the

State to violate the Court's existing injunction by issuing military-related license plates whose issuance has already been enjoined by this Court's judgment. These plates are described in more detail below. Second, it authorizes a new special prestige license plate for the National Association for Stock Car Auto Racing (NASCAR), thereby directly flouting the Court's direction to close the viewpoint discriminatory forum established by the Legislature. The State argues that the Act establishes a new, re-formulated scheme for issuance of special license plates that meets constitutional muster. For the reasons set forth below, the Act does not meet the requirements for relief from a judgment, and the State's motion should therefore be denied.

### **ACT 849**

Describing the license plates mandated by the Act, the State writes: "The acquisition of these plates requires membership in the branch of the military for which the plate is requested or having achieved the honor represented, such as the Purple Heart." Deft. Mem. at 2. This is a substantial misrepresentation of the license plates mandated by the Act. In order to describe these misrepresentations accurately, a review of the license plates established by the Act is necessary.

The license plates whose issuance is mandated by the Act and which area available to military service members are created by La. Rev. Stat. §§ 47:463.7 (former prisoner of war of World War I, World War II, the Korean Conflict, and the Vietnamese Conflict), 47:463.10 (Louisiana National Guard), 47:463.11 (disabled veterans), 47:463.13 (Congressional Medal of Honor recipients), 47:463.15 (retired member of the military reserve forces of the United States), 47:463.18 (veterans or retired veterans of the armed forces of the United States), 47:463.25 (veterans or retired veterans of the armed forces of the United States who served in the

Vietnamese Conflict), 47:463.26 (Purple Heart recipients), 47:463.27 (veterans or retired veterans of the armed forces of the United States who served in the Korean War), 47:463.29 (veterans of the United States Merchant Marine), 47:463.34 (citizens of Louisiana who were members of the U.S. Armed Forces or of the Coast Guard who served in Operation Desert Shield/Desert Storm), 47:463.38 (citizens of Louisiana who were members of the U.S. Armed Forces or of the Coast Guard who served in World War II), 47:463.55 (veterans who served in the Laos War [sic] after July 1, 1961, and before July 1, 1978), and 47:463.65 (veterans of the armed forces of the United States who served at a time during the Cold War [sic] which began on May 8, 1945 and terminated on December 25, 1991).[1]

Importantly, the Act also establishes four license plates that are either available regardless of military service, or for which membership in a private organization is required in addition to military service. First, La. Rev. Stat. 47:463.16 does not honor military service at all, but is instead available to "motorized and nonmotorized World War II or Korean War military *vehicles*, including motorcycles and trailers." *Id.* at (A) (emphasis added). On its face, this statute does not require *former or current* "membership in the branch of the military for which the plate is requested or having achieved the honor represented." Instead, it is available to

---

[1] These statutes differ from one another in important details. Some of the statutes are available only to current military service members; some are available only to veterans; some may pass to surviving spouses of current and former military service members, *e.g.*, 47:463.7, others may not, *e.g.*, 47:463.29; some require Louisiana residency or citizenship, *e.g.*, 47:463.38, others do not; some require payment of special fees in addition to the regular registration fee, *e.g.*, 47:463.10, others require payment only the regular registration fee, *e.g.*, 47:463.18, and still others exempt the applicant from fees altogether, *e.g.*, 47:463.13. Some of the statutes draw distinctions between categories of service members, depending for example upon length of service, *e.g.*, 47:463.10, or degree of disability. *See* 47:463.11 (disabled veterans). Given the expressive nature of these plates, all of these distinctions would presumably be subject to challenge on equal protection grounds by a military-affiliated person who was prevented from obtaining a license plate. In addition, the statutes revived by the Act that require surrender of certain plates when the surviving spouse of a veteran remarries, *e.g.*, 47:463.26, may violate the fundamental right to marry. *See, e.g., Zablocki v. Redhail*, 434 U.S. 374 (1978).

3

anyone who happens to be an owner of certain types of vehicle, including someone who never served in the United States military, or indeed someone who served in the military of Germany or Japan during World War II who actually engaged in combat against the United States. This plate may be passed on to any subsequent vehicle owner, *id.*, again regardless of military service. The Act also creates a new NASCAR special license plate. In order to be issued, this plate requires a minimum of 1000 applicants. These plates are also available to all vehicle owners regardless of military service.

Second, two license plates require membership in private organizations as a precondition to obtaining a special plate. La. Rev. Stat. 47:463.20 authorizes special plates for survivors of Pearl Harbor, but specifically requires that the applicant hold "a current membership in a Louisiana Chapter of the Pearl Harbor Survivors' Association." *Id.* at (A). Actual armed services veterans who survived Pearl Harbor but decline to join the "Louisiana Chapter of the Pearl Harbor Survivors' Association" are ineligible for these plates. La. Rev. Stat. 47:463.42 authorizes "any veteran of the United States Marine Corps who is a member of the Marine Corps League" to obtain a special license plate. *Id.* at (A). Thus, veterans of the Marine Corps who are not members of this organization are ineligible for the plates.

## ARGUMENT

### I.   The State's Motion Requests an Advisory Opinion.

The Act does not *replace* the pre-existing scheme challenged in this case and enjoined by this Court's judgment. It neither repeals the statutes establishing other special license plates not directs that the appeal of this Court's judgment be dismissed. Indeed, the State is vigorously prosecuting its appeal of this Court's judgment. Thus, the State's motion essentially asks this

4

Court to answer the question: "If the scheme on appeal remains enjoined, is the one established by the Act constitutional?" But this is a request for an advisory opinion, because if the Court of Appeals reverses this Court's judgment (as the State desires), the scheme established by the Act will be replaced by the one enjoined by this Court. The Court's review of the scheme may thus be entirely hypothetical, depending upon the outcome of the State's appeal. Federal courts are without power to issue such advisory opinions on hypothetical statutes. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).[2]

## II. The State Has Failed to Meet Its Burden Under Rule 60(b).

### A. The Standard Under Rule 60(b).

The State fails to describe the standard a movant must meet in order to obtain relief from a judgment. First, the movant must show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Auto Casualty Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Werner v. Carbo*, 731 F.2d 204,

---

[2] Even if the Court concludes that a decision on the State's motion does not constitute an advisory opinion, this Court lacks jurisdiction to grant the motion pending appeal. *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697, 699 (5th Cir. 1955) ("the district court retains jurisdiction to consider and deny such motions, but . . . if it indicates that it will grant the motion, the appellant should then make a motion in the Court of Appeals for a remand of the case in order that the district court may grant such motion."); *Winter v. Cerro Gordo Cty. Conserv. Bd.*, 925 F.2d 1069, 1073 (8th Cir. 1991) ("It is necessary for the district court to obtain leave from the court of appeals otherwise it is without jurisdiction and cannot grant the [60(b)] motion."); *cf. Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (district court is divested of jurisdiction to decide motion for relief of judgment after notice of appeal is filed); *Smith v. Lujan*, 588 F.2d 1304, 1307 (9th Cir. 1979) (same). Thus, if this Court finds, despite the arguments presented below, that the State's motion is well-taken, the State must first move the Court of Appeals to remand the case for entry of an appropriate order. However, under *Ferrell*, this Court has jurisdiction to, and should, deny the State's motion, for the reasons set forth below.
 The State cites only one case in its memorandum, *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989), which is not even a case addressing Rule 60(b). Moreover, *Coastal* stands for the proposition that, once a notice of appeal has been filed, "the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo . . ." *Id.* The State's motion seeks to alter the status quo by allowing currently enjoined plates to be issued. Thus, *Coastal* simply confirms that this Court lacks jurisdiction to grant the requested relief while the State's appeal is pending.

207 (4th Cir. 1984)). Even timeliness is in some question here, given that the Governor signed the bill into law on July 12, 2004, and approximately a month passed before the State brought this new legislation to the attention of the Court. But assuming timeliness is found, the State here has failed to show exceptional circumstances, since, as set forth below, the Act does not constitute a constitutional license plate scheme, even as to military-related license plates.

Second, "[a]fter a party has crossed this initial threshold, he then must satisfy one of the six *specific sections* of Rule 60(b)." *Dowell*, 993 F.2d at 48 (emphasis added). The State has not averred which specific subsection of Rule 60(b) it claims justifies relief from the judgment. It appears, nevertheless, that the State is seeking relief on the basis that the Act works a sufficient change in the law such that the judgment of the Court is now rendered inequitable. But the Act does not constitute such corrective action. In *Sullivan v. Houston Indep. School Dist.*, 475 F.2d 1071 (5th Cir. 1973), the district court denied a Rule 60(b) motion by a school district to vacate an injunction on the basis that it has promulgated new regulations that "literally compl[ied] with the conditions set out in the injunction." *Id.* at 1078. Even such a literal compliance with judicial instructions was not a sufficient basis for relief from the injunction, in part because there was no guarantee that the new regulations would be properly enforced. Here, because, as explained below, the Act does not even come close to what this Court indicated would be a constitutional scheme for special license plates, the State has clearly not met its burden. *See Ferrell v. Pierce*, 743 F.2d 454, 464 (7th Cir. 1984) ("changed circumstances entitle a party to

avoid a consent decree (or any equity decree) only when continued enforcement of the decree would be a *grievous wrong and would thus be inequitable*") (emphasis added).[3]

### B. The Act Does Not Create A Constitutional Scheme for Issuance of Military Special License Plates.

In its decision enjoining Louisiana's special license plate scheme, this Court described the hallmarks of a constitutional scheme for issuance of special license plates:

> The Louisiana legislature has the option of enacting a scheme which could contain "narrow, objective and definitive standards to guide the licensing authority." *Planned Parenthood*, 236 F.Supp.2d 564, 573 (D.S.C.2002) citing the Supreme Court *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134, 112 S. Ct. 2395, 120 L.Ed.2d 101 (1992) and cases cited therein. With such a scheme, an applicant for a license plate would not be as readily vulnerable to viewpoint discrimination and the guidelines could be used to vet for reasons other than viewpoint, such as obscenity, confusion to law enforcement authorities, duplication and the like.

*Henderson v. Stalder*, 265 F. Supp. 2d 699, 719 (E.D. La. 2003). The State urges this Court to interpret the Act as such a constitutional scheme. But the Act is not such a scheme, for two basic reasons.

First, it is clear from the description above of the plates mandated by the Act that the Act does not even constitute a viewpoint-neutral scheme for military special license plates, because two plates actually require membership in private organizations (Louisiana Chapter of the Pearl Harbor Survivors' Association and the Marine Corps League), and one is available to anyone owning certain types of vehicles regardless of military service or lack thereof.[4] And, of course, the enactment of a new NASCAR special license plate as a substantial part of the Act renders the

---

[3] In other words, the burden on a 60(b) motion falls heavily upon the movant. The State must show that what the Act establishes is a scheme that meets constitutional muster in all its details. The State has not done so, and, as shown below, cannot.

[4] The Act also revives statutes that raise a number of equal protection and other constitutional issues. *See* n.1 *supra*.

7

Act a mockery of what the Legislature's findings assert. There is no plate available for those who oppose NASCAR racing. Contrary to the State's sweeping assertion, there is thus no discernible standard that distinguishes the re-enacted plates from those not re-enacted, or for that matter, from the pro-choice plate Plaintiff Keeler is still unable to obtain. Simply put, the Legislature has most certainly not put into place a regulatory scheme by which special license plates can be obtained upon meeting neutral and objective criteria. The Act does not, therefore, satisfy this Court's criterion for a constitutional scheme, and the State should not be released from its duties under this Court's injunction.

Second, even assuming *arguendo* that the Act established a scheme for military service plates only, such a scheme is itself viewpoint discriminatory. Someone who was, for example, a conscientious objector or declined to volunteer for service cannot obtain a "pacifist" license plate, or a plate opposing the Vietnam War or the "Cold War." Opposition to military service in war is not honored by the Act, only participation in service. Such viewpoint discrimination is only possibly permissible if the government itself is the speaker, but the State has presented no argument that this Court's rejection of the State's "government speech" argument should not also apply to the subset of the plates mandated by the Act.

Indeed, the degree of private control over and participation in the process of obtaining the Act's plates is as complete as it was before, and, as before, the State's agreement or endorsement of private speech does not render it "government speech." *See Planned Parenthood v. Rose*, 373 F.3d 580, 581 (4th Cir. 2004) (Wilkinson, J., concurring in denial of rehearing en banc); *Planned Parenthood v. Rose*, 361 F.3d 786, 799 (4th Cir. 2004) (Michael, J.); *Sons of Confederate Veterans, Inc. v. Comm'r of Va. Dept. of Motor Vehicles*, 305 F.3d 241, 247 (4th

Cir. 2002) (Luttig, J., respecting denial of rehearing en banc) ("[T]he speech at issue in this case is both private and governmental in character (and actually, I believe, more the former), and . . . at a minimum therefore the government may not engage in viewpoint discrimination."). Specifically, many of the plates require payment of a special fee, and all require a private person to request the special plate. Had the Legislature enacted a statute under which all military service members were entitled for no additional charge to obtain a license plate reflecting the honor the State accords military service, such a statute might constitute government speech. The Act, however, is not such a statute.

## CONCLUSION

The Act creates no new, constitutional scheme for special license plates in Louisiana. It seeks to resuscitate a collection of statutes enjoined by the Court and fails to establish a regulatory mechanism that will ensure viewpoint neutrality in the future. The State has therefore failed to show that maintaining the injunction issued by this Court would cause any injustice, let alone "grievous wrong." The motion for relief from the judgment should accordingly be denied.

Respectfully submitted,

William E. Rittenberg
Rittenberg & Samuel, LLC
715 Girod Street, Suite 200
New Orleans, LA 70130
(504) 524-5555
Bar # 11287

Simon Heller*
The Center for Reproductive Law & Policy
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600
*Admitted *Pro Hac Vice*

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| RUSSELL J. HENDERSON, et al.　　　　　　　：<br><br>　　　　　　Plaintiffs,　　　　：<br>vs.　　　　　　　　　　　　　　　　　　　：<br><br>RICHARD L. STALDER, Secretary, Department　：<br>of Public Safety and Corrections and JOHN　　：<br>KENNEDY, State Treasurer,　　　　　　　　：<br><br>　　　　　　Defendants.　　　　：| Civil No. 00-2237, Section "K" |

## CERTIFICATE OF SERVICE

I, William E. Rittenberg, hereby certify that on this 22 day of September, 2004, I caused to be served a true and correct copy of PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT STALDER'S MOTION PURSUANT TO FED. R. CIV. P. 60(b) by First Class United States Mail, addressed as follows:

> Roy Mongrue, Jr.
> Assistant Attorneys General
> Louisiana Department of Justice
> P.O. Box 94005-Capitol Station
> Baton Rouge, LA 70804-9005
>
> Stephen A. Quidd
> Department of Public Safety
> P.O. Box 66614
> Baton Rouge, LA 70809

　　　　　　　　　　　　　　　　　　　/s/ William E. Rittenberg
　　　　　　　　　　　　　　　　　　　William E. Rittenberg, #11287
　　　　　　　　　　　　　　　　　　　715 Girod Street, Suite 200
　　　　　　　　　　　　　　　　　　　New Orleans, LA 70130
　　　　　　　　　　　　　　　　　　　(504) 524-5555

ENROLLED

Regular Session, 2004

# ACT No. 849

HOUSE BILL NO. 904

BY REPRESENTATIVES HAMMETT, FUTRELL, DORSEY, AND WALSWORTH

|   |   |
|---|---|
| 1 | AN ACT |
| 2 | To enact R.S. 47:463.2.1 and 463.126, relative to motor vehicle license plates; to provide for |
| 3 | creation of a NASCAR special prestige license plate; to provide relative to the design |
| 4 | and color of such plate; to provide relative to the fees for such plate; to authorize |
| 5 | promulgation of rules and regulations; to require issuance of plates established for |
| 6 | veterans and military personnel; and to provide for related matters. |
| 7 | Be it enacted by the Legislature of Louisiana: |
| 8 | Section 1.  R.S. 47:463.2.1 and 463.126 are hereby enacted to read as follows: |
| 9 | §463.2.1. Military plates |
| 10 | A.(1) The legislature finds that military service is absolutely essential to the |
| 11 | protection of the way of life and form of government enjoyed by the citizens of this |
| 12 | state and country. Indeed without the risks and sacrifice of the men and women who |
| 13 | serve and have served our country in uniform, the liberties and democracy exercised |
| 14 | in this state and country would not exist. |
| 15 | (2) The legislature further finds that the state has an obligation to express its |
| 16 | gratitude and debt to its veterans and military personnel. For decades the state has |
| 17 | used motor vehicle license plates to express this governmental expression of |
| 18 | gratitude and debt.  Through the issuance of official plates, the state honors those |
| 19 | who have, in many cases, placed themselves in harm's way in order to protect our |
| 20 | freedom and our way of life. Furthermore, honoring those who have served raises |
| 21 | public awareness of such service. This awareness in turn serves to aid in recruitment |
| 22 | of young people to military service. |
| 23 | (3) The legislature further finds that these plates are unique and distinct from |
| 24 | other prestige plates, are issued to an easily identified class of individuals, are often |

Page 1 of 3

CODING: Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

H.B. NO. 904                                                            **ENROLLED**

1    issued and renewed without additional fees, do not require a minimum number of

2    applicants, and are not used to raise funds for institutions or organizations.

3    (4) The legislature concludes from these findings that the state has a

4    legitimate governmental interest in the issuance of prestige license plates to military

5    personnel and veterans as a way to both honor veterans and to raise public awareness

6    of their service. The legislature further concludes that these plates are issued in

7    accordance with a "narrow, objective, and definitive standard" as is recommended

8    by the Henderson vs. Stalder decision.

9    B. Therefore, the Department of Public Safety and Corrections shall resume

10   issuing license plates pursuant to and in accordance with the following provisions of

11   law: R.S. 47:463.7, 463.10, 463.11, 463.13, 463.15, 463.16, 463.18, 463.20, 463.25,

12   463.26, 463.27, 463.29, 463.34, 463.38, 463.42, 463.55, and 463.65.

13                                     \*    \*    \*

14   §463.126. Special prestige license plates; NASCAR

15   A. The secretary of the Department of Public Safety and Corrections shall

16   establish a special prestige license plate for the National Association for Stock Car

17   Auto Racing, or "NASCAR", provided there is a minimum of one thousand

18   applicants for such plate. The design and color of such plates shall be determined by

19   the commissioner of motor vehicles provided they are in compliance with the

20   provisions of R.S. 47:463(A)(3). The license plate shall be restricted to passenger

21   cars, pickup trucks, vans, and recreational vehicles.

22   B. The department shall collect the regular motor vehicle registration license

23   fee provided in R.S. 47:463 and a handling fee of three dollars and fifty cents to be

24   retained by the department to offset a portion of administrative costs. Additionally,

25   the department may charge a one-time fee not to exceed twenty-five dollars to cover

26   the cost of the plate.

27   C. The department shall establish rules and regulations in accordance with

28   the Administrative Procedure Act as are necessary to implement the provisions of

29   this Section, including but not limited to collection and disbursement of the fee, the

CODING: Words in struck through type are deletions from existing law; words underscored are additions.

H.B. NO. 904 **ENROLLED**

1        <u>transfer and disposition of such license plates, the colors available, and the design</u>

2        <u>criteria.</u>

---
SPEAKER OF THE HOUSE OF REPRESENTATIVES

---
PRESIDENT OF THE SENATE

---
GOVERNOR OF THE STATE OF LOUISIANA

APPROVED: _____

CODING: Words in ~~struck through~~ type are deletions from existing law; words <u>underscored</u> are additions.